IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ELAINE WOOD, INDIVIDUALLY | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-00073-O |
| | § | |
| BANK OF AMERICA, ET AL. | § | |
| | § | |

FINDINGS, CONCLUSION, AND RECOMMENDATION REGARDING
DEFENDANT BANK OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Defendant Bank of America, N.A.'s ("BANA" or "Defendant")[1] Motion for Summary Judgment [doc. 44], filed on January 14, 2015. After reviewing the motion, response, reply, the pleadings and filings in this case, and applicable law, the Court recommends that Defendant's motion be **GRANTED.**

## I.  BACKGROUND

On May 2, 2007, Plaintiff Elaine Wood ("Plaintiff") executed a $513,000 promissory note, originally payable to GreenPoint Mortgage Funding, Inc. ("GreenPoint").[2]  (Defendant's Appendix in Support of Motion for Summary Judgment ("Def.'s App.") at 4 & Ex. A1 at 8.) Plaintiff used the loan principal to purchase a single-family residence at 403 Timber Lake Drive, Southlake, Texas (the "Property") by way of a warranty deed, recorded in Tarrant County, Texas.  (Plaintiff's Second Amended Complaint ("Pl.'s Am. Compl.") at 2-3 & Ex. A.)  Under

---

[1] Defendant GreenPoint Mortgage Funding, Inc. ("GreenPoint") was named in Plaintiff's Verified Petition filed in the 153rd Judicial District of Tarrant County, Texas, on December 2, 2013. By Plaintiff's First Amended Petition, filed on December 20, 2013, GreenPoint was dismissed as a party. *See* Tex. R. Civ. P. 65. To the extent that GreenPoint remained a defendant in the state court action, it joins in this Motion for Summary Judgment. This motion was filed by Defendant BANA; however, the underlying lawsuit includes Defendants Ocwen Loan Servicing, LLC ("Ocwen"); HSBC Bank USA, N.A., as Trustee for Certificate Holders of Deutsche ALT-A Securities Mortgage Loan Trust, Serious 2007-1 Mortgage Pass-Through Certificates Series 2007-1 ("HSBC"); and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants").

[2] GreenPoint apparently went out of business in 2007 and was succeeded by its parent company, Capital One. (Pl.'s Am. Compl. at 1.)

the Note, if Plaintiff failed to pay the full amount of each monthly payment on the date due, she would be in default. (Def.'s App., Ex. A1 at 10.) Further, the Note provides that, if Plaintiff is in default, the Note holder can require Plaintiff to pay the full amount of unpaid principal and interest following thirty-days written notice by first class mail or actual delivery of such acceleration and Plaintiff's failure to cure. (Def.'s App., Ex. A1 at 10.)

Plaintiff also executed a deed of trust to secure the Note, recorded in Tarrant County, Texas, creating a lien on the property. (Pl.'s Am. Compl., Ex. B at 17-32; Def.'s App. at 5 & Ex. B at 15-41.) Defendant MERS was listed in the Deed of Trust as a beneficiary and nominee for GreenPoint and GreenPoint's successors and assigns. (Pl.'s Am. Compl., Ex. B at 18-19; Def.'s App. at 5 & Ex. B at 17-18.) The Deed of Trust requires that all notices be in writing and states that such notices are deemed to have been provided when mailed by first class mail or when actually delivered to the borrower's notice address. (Pl.'s Am. Compl., Ex. B at 26; Def.'s App., Ex. B at 25.) Additionally, the Deed of Trust states that, without prior notice to the borrower, it can be sold and that the loan servicer can be changed with notice to the Plaintiff, stating the name and address of the new loan servicer. (Pl.'s Am. Compl., Ex. B at 27-28; Def.'s App., Ex. B at 26-27.) The Deed of Trust also requires the lender to provide notice to the borrower prior to acceleration, following default, specifying: (1) the default, (2) the action required to cure, (3) a date not less than thirty days from the date the notice is given by which the default must be cured, and (4) that failure to cure the default on or before that date will result in acceleration of the sums secured and the sale of the property. (Pl.'s Am. Compl., Ex. B at 29; Def.'s App., Ex. B at 28.) Further, the Deed of Trust requires the lender or trustee to give notice of the time, place, and terms of any foreclosure sale, if invoked, by posting and filing the notice at least

twenty-one days prior to the sale.  (Pl.'s Am. Compl., Ex. B at 29; Def.'s App., Ex. B at 28.)

Finally, the Deed of Trust states that:

> All rights, remedies and duties of the Trustee . . . may be exercised or performed by one or more trustees acting alone or together.  Lender, at its option and without cause, may . . . remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by the Lender in writing.

(Pl.'s Am. Compl., Ex. B at 29; Def.'s App., Ex. B at 28.)

Defendant BANA originally serviced the Note and Deed of Trust under a pooling and servicing agreement.  (Def.'s App. at 5.)  Beginning February 2010, Plaintiff defaulted on the Note, and BANA sent multiple notices of her default to her by certified mail.  (Def.'s App. at 5.) Specifically, on December 13, 2010, BANA sent Plaintiff a letter by certified mail stating:

> The loan is in serious default because the required payments have not been made. The total amount required to reinstate the loan as of the date of this letter is as follows:

| Monthly Charges: | 01/01/2010 | | $19,535.40 |
|---|---|---|---|
| | 05/01/2010 | | $40,530.40 |
| Late Charges: | 01/01/2010 | | $1,792.78 |
| Other Charges: | Uncollected Late Charges: | | $325.96 |
| | Uncollected Costs: | | $158.48 |
| | Partial Payment Balance: | | ($1,857.30) |
| | **TOTAL DUE:** | | $60,485.72 |

> You have the right to cure the default. To cure the default, on or before January 12, 2011, [BANA] must receive the amount of $60,485.72 plus any additional regular monthly payment or payments, late charges, fees and charges which become due on or before January 12, 2011.
>
> . . . [BANA] reserves the right to accept or reject a partial payment of the total amount due without waiving any of its rights herein or otherwise. . . .
>
> If the default is not cured on or before January 12, 2011, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default may result in the foreclosure and sale of your property.

(Def.'s App., Ex. D at 46) (emphasis in original.)

On December 27, 2011, GreenPoint, through MERS, assigned the Note and Deed of Trust to HSBC.  (Pl.'s Am. Compl. at 3 & Ex. C; Def.'s App. at 5 & Ex. C at 43.)  The assignment was recorded in Tarrant County, Texas.  (Pl.'s Am. Compl. at 3 & Ex. C; Def.'s App., Ex. C at 43.)  Plaintiff failed to cure the default, and on March 28, 2012, BANA, through Recon Trust Company, N.A. ("Recon"), served Plaintiff with a notice of acceleration and foreclosure.  (Def.'s App. at 5 & Ex. E at 49.)  On April 3, 2012, HSBC, through BANA as loan servicer and attorney-in-fact, executed an appointment of substitute trustee, appointing four individuals and Recon as substitute trustees under the Deed of Trust, which was filed in Tarrant County on April 9, 2012.  (Def.'s App. at 5-6 & Ex. F at 51.)

In November 2012, Plaintiff filed for bankruptcy.  (Ocwen, HSBC, and MERS's Appendix to Brief in Support of Defendants' Motion for Summary Judgment [doc. 40] ("Ocwen's App.") at 4 & Ex. A7.)[3]  In the bankruptcy schedules, Plaintiff listed BANA as a "secured creditor" for the Note and the Deed of Trust as a "first lien" on the property.  (Ocwen's App. at 4 & Ex. A8 at 63.)  Plaintiff also acknowledged that $512,985 was due under the Note and estimated that her arrearage on the Note was $34,259.81.  (Ocwen's App. at 4 & Ex. A8 at 63.)  Plaintiff's bankruptcy was discharged on August 27, 2013.  (Ocwen's App. at 5 & Ex. A9 at 80.)  Thereafter, with Plaintiff still in default, BANA, through Recon, served Plaintiff by certified mail with notice of a substitute trustee's sale, stating that the property would be sold at a foreclosure sale on December 3, 2013.  (Def.'s App. at 6 & Ex. G at 53.)  Defendant claims that

---

[3] In a motion for summary judgment, the court may consider material not cited but in the record.  Fed. R. Civ. P. 56(c)(3); *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996) ("[A] district judge is not compelled to limit the basis for a summary judgment on those facts listed in the motion for summary judgment . . . . [A] court has the ability to grant a summary judgment on facts not briefed by the movant, as long as the non-movant has notice of the issue.").

this notice was provided at least twenty-one days before the scheduled foreclosure sale; however, no date appears on this notice.[4]   (Def.'s App. at 6 & Ex. G at 53.)

Two days prior to the scheduled foreclosure sale, the loan servicing rights were transferred from BANA to Ocwen.  (Def.'s App. at 6.)  Plaintiff was provided advance notice of the servicing transfer in a letter dated November 12, 2013.  (Pl's Amend. Compl., Ex. D at 35; Def.'s App. at 6 & Ex. H at 56.)  Plaintiff failed to cure the default (Def.'s App. at 5-6), and the property was sold to HSBC by substitute trustee's deed on December 3, 2013 (Ocwen's App. at 5 & Ex. A12 at 85-88).  The trustee's deed was recorded in Tarrant County[5] on December 20, 2013.  (Ocwen's App. at 5 & Ex. A12 at 88).

On December 2, 2013, Plaintiff filed a Verified Petition in the 153rd Judicial District Court of Tarrant County, Texas.  Plaintiff filed her First Amended Petition on December 20, 2013.   On January 7, 2014, the state court entered a Temporary Restraining Order.  Defendant BANA removed the action to this Court on February 3, 2014.  Thereafter, on February 21, 2014, Defendants filed a motion for Judgment on the Pleadings.  In an order dated May 9, 2014, the Court denied Defendants' motion for Judgment on the Pleadings and granted Plaintiff leave to amend her complaint.  On June 9, 2014, Plaintiff filed her Second Amended Complaint.  In such complaint, Plaintiff alleges that the Note is paid in full.  (Pl.'s Am. Compl. at 5.)  Plaintiff also alleges causes of action against Defendants for: (1) conspiracy to defraud; (2) breach of contract; and (3) misrepresentation.  (Pl.'s Am. Compl. at 4-9.)  In addition, Plaintiff appears to implicitly

---

[4] Plaintiff acknowledges receiving the notice on October 24, 2013.  (Plaintiff's Affidavit in Support of Plaintiff's Objection and Opposition to Defendants Ocwen, HSBC, and MERS's Motion for Final Judgment [ doc. 42] ("Pl.'s Aff. to Ocwen Resp.") at 15 ("Affiant received notice of Foreclosure Sale scheduled for December 2, 2014 [sic].").)

[5] The Court notes that in his Affidavit, the loan analyst for Ocwen Financial Corporation states that the Substitute Trustee's deed was recorded in Travis County.  (Ocwen's App. at 5.)  However, this appears to be a typographical error.  (*See* Ocwen's App., Ex. A12 at 85-88.)

allege a claim of wrongful foreclosure as both the title and contents of the complaint describe such action. (Pl.'s Am. Compl. at 1-2) ("This is a suit of Wrongful Foreclosure, Sale, Eviction and Quiet Title . . . .") In its motion for summary judgment, Defendant argues that the Court should grant summary judgment against all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 56(a)-(c). (Defendant's Motion for Summary Judgment ("Def.'s Mot.") at 1-2.)

## II. LEGAL STANDARD

Summary judgment is proper when the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if "it is real and substantial as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001). Facts are "material" if they "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *overruled on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Id.*; *Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989).

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits.[6] *See* Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Rule 56, however, "does not impose upon the district court a duty to sift through the record in

---

[6] The court may consider material not cited but in the record. Fed. R. Civ. P. 56(c)(3); *Turco*, 101 F.3d at 1093.

search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). Further, the Court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

To prevail on a motion for summary judgment, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, the moving party may satisfy its summary judgment burden of proof by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 323. If the non-moving party bears the burden of proof at trial, the moving party need only point to the absence of any fact issue in the record, and the evidentiary burden then shifts to the non-moving party to show with "significant probative" evidence that triable issues of fact exist. *Id.* at 322; *see also Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). If the moving party meets its burden, the non-moving party can then defeat the motion by countering with sufficient evidence of its own that demonstrates the existence of a genuine issue of material fact. *Int'l Shortstop, Inv. v. Rally's Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991).

This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Little*, 37 F.3d at 1075. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

## III.  ANALYSIS

### A. Conspiracy to Defraud

"Under Texas law, the essential elements of a civil conspiracy are: '(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.'" *Wackman v. Rubsamen*, 602 F.3d 391, 408 (5th Cir. 2010) (quoting *Chon Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)).  Similarly, under Texas law, conspiracy to defraud requires a showing of a common purpose to defraud, supported by a concerted action.  *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 586 (5th Cir. 2008) (citing *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968)).

Based on Plaintiff's amended complaint and subsequent filings, it appears that she bases her conspiracy to defraud claim on assertions that (1) the Note and Deed of Trust were not properly transferred to HSBC because MERS lacked authority to assign the Deed of Trust and because the assignment violated the terms of the Pooling and Service Agreement ("PSA") and was "robo-signed" by BANA employees; and (2) BANA lacked standing to foreclose on the property.  (Pl.'s Am. Compl. at 4.)  By contrast, Defendant argues that it is entitled to judgment in its favor because (1) BANA did not conduct the foreclosure sale after servicing rights were transferred to Ocwen and HSBC properly foreclosed on the property; (2) BANA's pre-foreclosure related actions while acting as loan servicer were consistent with Texas law; (3) Plaintiff lacks standing to challenge the Deed of Trust assignment because she was not a party to or a third party beneficiary of the Deed of Trust; and (4) MERS properly assigned the Deed of Trust to HSBC.  Ultimately, because the wrongful acts alleged by Plaintiff are not contrary to

law or the terms of the Deed of Trust, the Court recommends that summary judgment be granted in Defendant BANA's favor.

### 1. BANA Did Not Conduct the Foreclosure and HSBC Properly Foreclosed

Defendant BANA has conclusively shown that it did not conduct the foreclosure sale after servicing rights were transferred to Ocwen. (Def.'s App. at 6 & Ex. H at 56; Ocwen's App., Ex. A12 at 85.) Instead, the Substitute Trustee's Deed shows that Ocwen, acting on behalf of the current mortgagee, HSBC, conducted the foreclosure sale, following the effective date of the noticed servicer transfer. (Def.'s App. at 6 & Ex. H at 56; Ocwen's App., Ex. A12 at 85.)

Additionally, Defendant BANA has established that HSBC is the owner of the Note per the December 27, 2011 assignment by GreenPoint, through MERS. (Pl.'s Am. Compl., Ex. C at 33; Def.'s App., Ex. C at 43.) The Texas Property Code states that a "mortgagee" or "mortgage servicer" may conduct a foreclosure. Tex. Prop. Code §§ 51.001, 51.0025 (West 2014). The Texas Property Code defines a mortgagee as "(A) the grantee, beneficiary, owner, or holder of a security instrument; . . . or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." Tex. Prop. Code § 51.0001(4)(A)-(C). Here, HSBC satisfies the definition under subsection (4)(C) because HSBC is the last entity to whom the security has been assigned of record as demonstrated by the December 2011 assignment.[7] (Pl.'s Am. Compl., Ex. C at 33; Def.'s App., Ex. C at 43.) Thus, HSBC had authority under Texas law to foreclose on the property.

### 2. BANA's Pre-Foreclosure Actions Were Consistent With Texas Law

The Texas Property Code expressly permits administration of the foreclosure process by a mortgage servicer. Tex. Prop. Code § 51.0025. This provision states that:

---

[7] HSBC also satisfies the Texas Property Code's definition of mortgagee under subsection (4)(A), as evidenced by its holding the original note with indorsement in blank by GreenPoint. (Ocwen's App. at 3 & Ex. A1.)

A mortgage servicer may administer the foreclosure of property under Section 51.002 on behalf of a mortgagee if: (1) the mortgage servicer and the mortgagee have entered into an agreement granting the current mortgage servicer authority to service the mortgage; and (2) the notices required under Section 51.002(b) disclose that the mortgage servicer is representing the mortgagee under a servicing agreement with the mortgagee and the name of the mortgagee and: (A) the address of the mortgagee; or (B)  the address of the mortgage servicer, if there is an agreement granting a mortgage servicer the authority to service the mortgage.

Tex. Prop. Code § 51.0025.  A mortgage servicer is "the last person to whom a mortgager has been instructed by the current mortgagee to send payments for debt secured by the instrument." Tex. Prop. Code § 51.001(3).  The evidence clearly shows that BANA was the loan servicer until December 1, 2013—from the time of Plaintiff's default, when the loan was accelerated, and when foreclosure was initiated.  (Def.'s App. at 5-6 & Ex. D at 46 & Ex. E at 49 & Ex. H at 56; Ocwen's App. at 3 & Ex. A8 at 63).  Thus, while acting as HSBC's loan servicer, BANA had authority to initiate foreclosure under Texas law.

### 3. Plaintiff Lacks Standing to Challenge the Deed of Trust Assignment

In *Reinagel v. Deutsche Bank Nat'l Trust Co.*, the Fifth Circuit made it clear that a non-party to a deed of trust assignment does have standing to challenge the assignment on grounds that the assignment is void, *but does not have standing to challenge the assignment on grounds that the assignment is voidable.  Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220, 225 (5th Cir. 2013).  In *Reinagel*, the Fifth Circuit concluded that the plaintiffs' challenges to the authority of the person who executed the deed of trust and note assignment and to the authenticity of the signature on the assignment[8] and allegations that the assignment was contrary to the terms of the Pooling and Service Agreement were grounds that made the assignment *voidable*, not void.  *Id.* at 226-28.  That meant, for purposes of the plaintiffs' standing to assert

---

[8] The Texas Supreme Court has held that a contract executed on behalf of a corporation by a person fraudulently purporting to be a corporate officer is, like any other unauthorized contract, not void, but merely voidable at the election of the defrauded principal. *Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976).

such challenges to the assignment, that the plaintiffs could not, on those asserted bases, challenge the "facially valid" assignment of the note and deed of trust. *Id.* Here, *Reinagel* clearly precludes Plaintiff's challenges to the assignment's validity because she was not a party to the assignment.[9]

### 4. MERS Properly Assigned the Deed of Trust to HSBC

The Deed of Trust explicitly lists MERS as a beneficiary and nominee for GreenPoint and GreenPoint's successors and assigns. (Pl.'s Am. Compl., Ex. B at 18-19; Def.'s App., Ex. B at 17-18.) Further, the Deed of Trust grants MERS the right to exercise all rights under the Deed of Trust, including the right to foreclose and sell the property. (Def.'s App., Ex. B at 19.) Thus, under Texas law, MERS had authority to assign the Deed of Trust as a beneficiary and nominee. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253 (5th Cir. 2013) ("Texas recognizes assignment of mortgages through MERS and its equivalents as valid and enforceable"); *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *5 (Tex. App.—Austin Aug. 30, 2012, no pet.) (holding that MERS was a "mortgagee" as defined by the Texas Property Code because the deed of trust identified MERS as the beneficiary and the nominee for the lender and its successors and assigns) (mem. op.).

Although not briefed by Defendant BANA, it is necessary to note that Plaintiff's claim that the assignment is unenforceable because it was "robo-signed"[10] by BANA employees lacks

---

[9] Plaintiff has failed to identify any facts indicating that the parties to the PSA intended that she be a third-party beneficiary, and the Texas Supreme Court has established "a presumption . . . that parties contracted for themselves," which applies "unless it clearly appears that they intended a third party to benefit from the contract." *Basic Capital Mgmt., Inc., v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011). Moreover, even if Plaintiff had rebutted this presumption, the fact that the assignments violated the PSA, a separate contract, would not render the assignments void, but would merely entitle Plaintiff to sue for breach of the PSA. *Reinagel*, 735 F.3d at 228.

[10] "'Robo-signing' is the colloquial term the media, politicians, and consumer advocates have used to describe an array of questionable practices banks deployed to perfect their right to foreclose in the wake of the subprime mortgage crisis, practices that included having bank employees or third-party contractors: (1) execute and

merit.   First, Plaintiff has failed to offer any evidentiary support for her assertion that the signature on the assignment was a forgery or a robo-signature, aside from a "4closurefraud.org" printout submitted earlier in the proceedings, listing Martha Munoz as a "well known" MERS "robo-signer," who is, apparently, a BANA employee.   (Plaintiff's Response to Defendants Ocwen, HSBC, and MERS's Rule 12(c) Motion for Judgment on the Pleadings [doc. 20] ("Pl.'s Resp. to Ocwen's Rule 12(c) Mot.") at 3-4 & Ex. B. at 11-12.)   Even if the web posting is true, this fails to show that Martha Munoz or BANA lacked authority to act on behalf of MERS. *Reinagel*, 735 F.3d at 226 (holding, in almost exactly these circumstances, that the plaintiffs "conspicuously fail[ed] to allege . . . that [the signer] lacked authority to act on behalf of Citi or that Citi lacked authority to act on behalf of Argent"); *see also Holloway v. Wells Fargo Bank, N.A.*, No. 3:12-CV-2184-G BH, 2013 WL 1187156, at *20 (N.D. Tex. Feb. 26, 2013) (holding that the plaintiff's "bare assertion" of robo-signing failed to raise a reasonable inference that it was fraudulent), *report and recommendation adopted*, No. 3:12-CV-2184-G BH, 2013 WL 1189215 (N.D. Tex. Mar. 22, 2013).   Moreover, the Fifth Circuit Court of Appeals has held that an assignee of a mortgage can demonstrate that it is the rightful holder of a mortgage and can foreclose, notwithstanding mortgagor's allegation that the assignment has been "robosigned," where the assignee presents a signed, notarized assignment document that has also been recorded by the county clerk. *Martins*, 722 F.3d at 252.   Therefore, Plaintiff's "robo-signing" claim fails as a matter of law because Defendant has offered sufficient evidence, through its recorded assignment (Def.'s App., Ex. C at 43), that HSBC was the rightful holder of the mortgage, and

---

acknowledge transfer documents in large quantities within a short period of time, often without the purported assignor's authorization and outside of the presence of the notary certifying the acknowledgment, and (2) swear out affidavits confirming the existence of missing pieces of loan documentation, without personal knowledge and often outside of the presence of the notary."

*Reinagel*, 735 F.3d at 223-24.

Plaintiff has failed to present evidence creating a genuine issue of fact. *See Martins*, 722 F.3d at 252-53.

Because the underlying acts supporting Plaintiff's conspiracy to defraud claim were not wrongful, the conspiracy claim must also fail, because "conspiracy is not a stand-alone claim, it depends on participation in some underlying tort." *Berry v. Indianapolis Life Ins. Co.*, 600 F. Supp. 2d 805, 814 (N.D. Tex. 2009); *see also Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).   Based on the foregoing, the Court recommends that Defendant BANA's Motion for Summary Judgment on Plaintiff's cause of action for conspiracy be **GRANTED**.

### B. Breach of Contract

"In Texas, '[t]he essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) *performance or tendered performance by the plaintiff*; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)) (emphasis added).   "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Case Corp v. Hi-Class Bus. Sys. Of Am., Inc.*, 184 S.W.3d 760, 769-70 (Tex. App.—Dallas 2005, pet. denied); *see also Berry v. Fed. Nat. Mortgage Ass'n*, No. 3:11-CV-1288-L, 2013 WL 1294008, at *4 (N.D. Tex. Mar. 29, 2013) (mem. op.).

Plaintiff argues that the Note is paid in full (Pl.'s Am. Compl. at 2) and appears to allege that Defendant breached the Deed of Trust by failing to provide the requisite notice of default and intent to accelerate (Pl.'s Am. Compl. at 6).   However, as explained below, Plaintiff's

assertions do not comport with the available evidence.[11]  Summary judgment should be granted in Defendant BANA's favor.

### 1. No Evidence That The Note Is Paid In Full

Although Plaintiff alleges that she paid the Note in full, the evidence contradicts this assertion and shows that Plaintiff never cured her original default.  First, Plaintiff acknowledged that she was in default on the loan in her November 12, 2012 bankruptcy schedules.  (Ocwen's App., Ex. A8 at 63.)  This default continued through the December 2013 foreclosure (Def.'s App. at 5-6), and Plaintiff has failed to put forward any evidence that the Note is paid in full.  Thus, Plaintiff has failed to raise a genuine issue of material fact.  *See Little*, 37 F.3d at 1075 (explaining that, if a party moving for summary judgment demonstrates the absence of a genuine issue of material fact, the nonmovant must identify specific facts showing that there is a genuine issue for trial, which cannot be accomplished by way of "some metaphysical doubt as to the material facts, . . . by conclusory allegations, . . . by unsubstantiated assertions, . . . or by only a scintilla" of evidence) (internal quotations and citations omitted).  "Plaintiff's failure to perform her contractual obligations warrants summary judgment on her breach of contract claim on that basis alone." *Richardson v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 809 (N.D. Tex. 2012), *aff'd*, 538 F. App'x 391 (5th Cir. 2013).

### 2. Required Notices

Next, Plaintiff claims Defendant failed to send a notice of default and intent to accelerate, or possibly, notice of acceleration.  (Pl.'s Am. Compl. at 6.)[12]  Plaintiff has since acknowledged

---

[11] Plaintiff also reasserted her claim that the assignment of the Deed of Trust is invalid because the assignment was in violation of the PSA.  However, as explained above, Plaintiff has failed to show that she is an intended third-party beneficiary to the PSA.  *See Basic Capital Mgmt.*, 348 S.W.3d at 900; *Reinagel*, 735 F.3d at 228.

[12] Defendant BANA has highlighted that the Deed of Trust provision referenced in Plaintiff's Second Amended Complaint is not found in the Deed of Trust at issue.  (Defendant's Brief in Support of Motion for

receiving the requisite notice of acceleration. (Plaintiff's Objection and Opposition to Defendant's Motion for Final Judgment ("Pl.'s Resp.") at 10) ("On March 28, 2012, Plaintiff received a notice . . . . [t]hat [the] amount to date owed [was] $634,982.39 and interest and fees grow each day.") This aligns with Defendant BANA's contention that, on March 28, 2012, through Recon, it served Plaintiff with a notice of acceleration. (Def.'s App., Ex. E at 49.) Likewise, Plaintiff's claim that Defendant failed to send notice of default and intent to accelerate is without merit, even though Plaintiff has not admitted that she received such notice. Specifically, Defendant BANA has included with its motion the December 13, 2010 notice of default and intent to accelerate, which was sent to Plaintiff's address by certified mail. (Def.'s App., Ex. D at 45-47.) Thus, although not explicitly titled as such, BANA sent Plaintiff notice of default and intent to accelerate to Plaintiff's last known address on December 13, 2010, as required under the Deed of Trust (Def.'s App., Ex. B at 28), when Plaintiff was $60,485.72 in arrears (Def.'s App., Ex. D at 45-47). Even if Plaintiff did not actually receive this notice, Defendant's summary judgment evidence supports a finding that Plaintiff was served with the proper notice. Tex. Prop. Code § 51.002(d)-(e); *Clark v. F.D.I.C.*, 849 F. Supp. 2d 736, 747 (S.D. Tex. 2011) (holding that the plaintiff's objection that they did not *receive* one or more notices required by law is not relevant under Texas Property Code § 51.002(e)).

### 3. Plaintiff's "Split-The-Note" Theory

Couched in Plaintiff's breach of contract claim, Plaintiff appears to challenge the foreclosure based on the theory that, through the process of securitization or assignment, the Note and Deed of Trust were somehow split or bificurated, precluding a valid foreclosure. (Pl.'s Am. Compl. at 5.) In other words, it appears that Plaintiff argues that the Deed of Trust transfer

---

Summary Judgment at 8; *compare* Pl.'s Am. Compl. at 6, *with* Pl.'s Am. Compl., Ex. B.) Ultimately this discrepancy is immaterial to the Court's findings and conclusions because Defendant complied with both the Deed of Trust requirements and Plaintiff's misquoted requirements.

by MERS "split" the Note from the Deed of Trust, nullifying both.  This is simply contrary to law:

> The "split-the-note" theory is . . . inapplicable under Texas law where the foreclosing party is a mortgage servicer and the mortgage has been properly assigned.  The party to foreclose need not possess the note itself.  Here, the mortgage was assigned to MERS, and then by MERS to BAC—the assignment explicitly included the power to foreclose by the deed of trust.  MERS and BAC did not need to possess the note to foreclose.

*Martins*, 722 F.3d at 255; *see also Robeson v. Mortgage Elec. Registration Sys., Inc.*, No. 02-10-00227-CV, 2012 WL 42965, at *6 (Tex. App.—Fort Worth Jan. 5, 2012, pet. denied) (explaining that a deed of trust "gives the lender as well as the beneficiary the right to invoke the power of sale," even though it would not be possible for both to hold the note) (mem. op.).  Further, HSBC holds both the Note and the Deed of Trust.  (Ocwen's App. at 3, 7-12 & Ex. A5.)  Therefore, Plaintiff has also failed to show that the Deed of Trust and Note were ever actually "split."  *See, e.g.*, *Bashore v. Bank of Am.*, No. 4:11CV93, 2012 WL 629060, at *3 (E.D. Tex. Feb. 27, 2012), *report and recommendation adopted*, No. 4:11CV93, 2012 WL 1080864 (E.D. Tex. Mar. 30, 2012).

### 4. Loan Modification or Waiver of Breach

Although not briefed by Defendant BANA, Plaintiff also appears to allege that Defendant somehow waived the right to foreclose due to the alleged acceptance of a loan modification review well before the most recent and at issue foreclosure process commenced.  (Pl.'s Resp. at 2-12.)  However, Plaintiff has failed to establish a valid loan modification contract.  "Texas law does not recognize . . . oral loan modification agreements . . . [a]ny loan agreement exceeding $50,000 in value must be in writing."  *Water Dynamics Ltd. v. HSVC Bank USA Nat. Ass'n*, No. 4:11-CV-762-Y, 2012 WL 1388017, at *5 (N.D. Tex. Apr. 19, 2012) (citing Tex. Bus. & Com.

16

Code § 26(b) (West 2014)).  Plaintiff's implicit allegation that an oral modification contract

existed is without merit.  Tex. Bus. & Com. Code § 26(b).

Further, a waiver "is the intentional relinquishment of a right actually known, or

intentional conduct inconsistent with claiming that right." *Sanghera v. Wells Fargo Bank, N.A.*,

No. 3:10-CV-2414-B, 2012 WL 555155, at *4 (N.D. Tex. Feb. 21, 2012) (citing *Ulico Cas. Co.*

*v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)).  To establish a waiver, the plaintiff

must show "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual

knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional

conduct inconsistent with the right." *Id.* (quoting *Ulico Cas. Co.*, 262 S.W.3d at 778).  Here, the

Deed of Trust states:

> 12. Borrower Not Released; Forbearance By Lender Not a Waiver.
> Extension of time for payment or modification of amortization of the sums
> secured by this Security Instrument granted by Lender to Borrower or any
> Successor in Interest of Borrower shall not operate to release the liability of
> Borrower or any Successors in Interest of Borrower.  Lender shall not be required
> to commence proceedings against any Successor in Interest of Borrower or to
> refuse to extend time for payment or otherwise modify amortization of the sums
> secured by this Security Instrument by reason of any demand made by the original
> Borrower or any Successors in Interest in Borrower.  Any forbearance by Lender
> in exercising any right or remedy including, without limitation, Lender's
> acceptance of payments from third persons, entities or Successors in Interest of
> Borrower or amounts less than the amount due, shall not be a waiver of or
> preclude the exercise of any right or remedy.

(Pl.'s Am. Compl., Ex. B at 26; Def.'s App., Ex. B at 25.)  Based on this language, any action by

Defendant to agree to modify the loan would not constitute a waiver.  Moreover, the record in

this matter shows that Defendant did not have actual intent to relinquish the right to foreclose.

(Pl.'s Resp. at 2-12.).[13]

---

[13] Plaintiff's response establishes that Defendant continued to pursue foreclosure from 2009 through the
2013 foreclosure at issue, despite Plaintiff's pursuit of a loan modification and relief through the various federal
home loan assistance programs.  (Pl.'s Resp. at 2-12.)

Based on the foregoing, the Court recommends that Defendant BANA's Motion for Summary Judgment on Plaintiff's cause of action for breach of contract be **GRANTED**.

### C. Misrepresentation

It is unclear whether Plaintiff has claimed fraud or negligent misrepresentation. However, as shown below, Plaintiff is not entitled to relief under either theory.

To establish a fraud claim under Texas law, a plaintiff must show that:

> (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation.

*Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2009). By contrast, to establish a negligent misrepresentation claim under Texas law, a plaintiff must show that:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Further, claims alleging fraud or misrepresentation must be stated with particularity as required under Federal Rule of Civil Procedure Rule 9(b). Fed. R. Civ. P. 9(b); *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010).

> What constitutes particularity will necessarily differ with the facts of each case . . . . [but] [a]t a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. . . . Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out.

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotations and citations omitted).

Here, Plaintiff contends that BANA made false statements of material fact by failing to respond to her request to examine the original "wet ink" note and through "written statements as to alleged ownership of the Plaintiff's deed of trust, note, and legal entitlement to demand monies from Plaintiff." (Pl.'s Am. Compl. at 7.)  Further, Plaintiff contends that BANA "knew that the note had been paid in full and was not in default." (Pl.'s Am. Compl. at 7.)  Finally, she contends that Ocwen and HSBC acted in concert with BANA "in order to defraud the Plaintiff and to steal Plaintiff's home." (Pl.'s Am. Compl. at 8.)  First, even after having multiple opportunities to amend her complaint and to respond to Defendant's motion, Plaintiff has simply failed to explain "who, what, when, [or] where" relating to her misrepresentation claim. *See Benchmark Elec., Inc.*, 343 F.3d at 724 (internal quotations and citations omitted).  Further, the Fifth Circuit has expressly rejected Plaintiff's "show me the note theory," explaining that mortgage servicers may validly assign a mortgage or initiate a non-judicial foreclosure without producing the original, signed note. *Martins*, 722 F.3d 249 at 253-54.  Likewise, even if Defendant failed to provide Plaintiff with a "full, complete, and truthful disclosure of its underlying, undisclosed intentions," (Pl.'s Am. Compl. at 8), Plaintiff has failed to assert or show that Defendant was under a duty to disclose.[14] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008); *see also White v. BAC Home Loans Servicing, LP*, No. 3:09-CV-2484-G,

---

[14] Under Texas law, a duty to disclose may arise in four circumstances:

(1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when the new information makes the earlier misrepresentation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression.

*Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (citing *Formosa Plastics Corp. v. Presidio Engineers and Contractors, Inc.*, 941 S.W.2d 138, 146-47 (Tex. App.—Corpus Christi 1995), *rev'd on other grounds*, 960 S.W.2d 41 (1997)).

2010 WL 4352711, at *4 (N.D. Tex. Nov. 2, 2010) (granting defendant's Rule 12(b)(6) motion because plaintiff failed to identify any specific material fact that the defendant had a duty to, but did not, disclose and because plaintiff failed to "plead any facts tending to show that he justifiably relied . . . on any misrepresentation"). Finally, as explained in the sections discussing Plaintiff's conspiracy and breach of contract claims, Plaintiff has failed to show that Defendant committed any legally wrongful act while servicing the loan, considering Plaintiff's loan modification requests, or pursuing foreclosure after Plaintiff's default. Tex. Prop. Code §§ 51.001, 51.0025; Tex. Bus. & Com. Code § 26(b). Therefore, the Court recommends that Defendant's Motion for Summary Judgment on Plaintiff's cause of action for misrepresentation be **GRANTED**.

### D. Wrongful Foreclosure

The elements of a wrongful foreclosure claim are (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied). However, noncompliance with the procedures surrounding a foreclosure sale is sufficient reason for a court to set aside the sale, even if the sales price was adequate to account for the indebtedness. *Shearer v. Allied Live Oak Bank*, 758 S.W.2d 940, 942 (Tex. App.—Corpus Christi 1988, writ denied). Also, "minor defects," such as "the deed of trust's omission of a partnership designation, . . . the notice of default stating the incorrect amount of principal and interest, . . . or the notice of foreclosure sale failing to state a specific time on the date that the sale was to occur" in an otherwise valid foreclosure does not void the sale. *Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 474 (S.D. Tex. 2012) (holding that the failure to send required notices

is "not the type of minor noncompliance that the case law overlooks") (citing *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 628 (Tex. 2011) (per curiam)). Both the requirements set forth in the Texas Property Code and the terms of the deed of trust must be followed. Tex. Prop. Code § 51.002; *Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982). Finally, under Texas law, recitals in a substitute trustee's deed, reciting compliance with all conditions of the deed of trust, constitutes prima facie evidence of a valid foreclosure sale and gives rise to a rebuttable presumption of validity. *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983).

Here, Plaintiff has failed to demonstrate that Defendant did not satisfy the necessary foreclosure prerequisites under Texas Property Code section 51.002. Each required element will be discussed separately, ultimately concluding that summary judgment should be granted in Defendant's favor as to Plaintiff's implied wrongful foreclosure claim.

### 1. Notice

Under Texas law, it is not a defect in the sale procedure if notice is properly posted by a former trustee and the sale is conducted by a substitute trustee. *Koehler v. Pioneer Am. Ins. Co.*, 425 S.W.2d 889, 891 (Tex. Civ. App.—Fort Worth 1968, no writ). Moreover, unless the deed of trust requires notice of substitution, the trustee has no duty to inform the debtor or anyone else about the substitution of trustees. *Sanders v. Shelton*, 970 S.W.2d 721, 726-27 (Tex. App.—Austin 1998, pet. denied).

By statute, Defendant was required to (1) notify Plaintiff by certified mail that the Deed of Trust was in default and give her at least twenty days to cure and (2) give Plaintiff at least twenty-one days' notice of the sale by certified mail. Tex. Prop. Code § 51.002(b)(3), (d). "Service of a notice [of trustee sale] by certified mail is complete when the notice is deposited in

the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address as shown by the records of the holder of the debt." Tex. Prop. Code § 51.002(e). The general purpose of the statute is to provide protection for the debtor, and it provides for only constructive notice of the foreclosure. *See Onwuteaka v. Cohen*, 846 S.W.2d 889, 892 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Lambert v. First Nat'l Bank of Bowie*, 993 S.W.2d 833, 835 (Tex. App.—Fort Worth 1999, pet. denied). There is no requirement that the debtor receive actual notice. *See Martinez v. Beasley*, 616 S.W.2d 689, 690 (Tex. Civ. App.—Corpus Christi 1981, no writ); *Lambert*, 993 S.W.2d at 835.

As explained above, Plaintiff's allegations that Defendant failed to send the requisite notice of default and intent to accelerate and notice of acceleration are meritless. Further, Plaintiff acknowledges that she received notice of the foreclosure sale. In fact, Plaintiff received multiple notices of foreclosure sale throughout the course of the loan. The first occurred on April 9, 2012. (Pl.'s Resp. at 10 ("On April 9, 2012, Plaintiff received a Foreclosure Notice of Sale from ReconTrust . . . indicat[ing] that a sale of the subject property had been set for May 1, 2012.").) Likewise, another foreclosure notice was received on August 29, 2012. (Pl.'s Resp. at 11 ("On August 29, 2012, Plaintiff received a notice of Foreclosure sale set for October 2, 2012.").) And again on October 5, 2012. (Pl.'s Resp. at 12 ("On October 5, 2012, Plaintiff received notice that Foreclosure was now reset for November 6, 2012.").) Ultimately, none of these foreclosure sales occurred. However, earlier in this litigation, Plaintiff also acknowledged receiving notice on October 24, 2013 of the December 2013 foreclosure sale. (Plaintiff's Affidavit in Support of Plaintiff's Objection and Opposition to Defendants Ocwen, HSBC, and MERS's Motion for Final Judgment [doc. 42] ("Pl.'s Aff. to Ocwen Resp.") at 15 (On "October 24, 2013[,] Affiant received notice of Foreclosure Sale scheduled for December 2, 2014 [sic]").)

Even more, Plaintiff acknowledges receiving a "courtesy call" from "Christy Aguliar at BANA," informing her that her house "was still on the foreclosure docket for . . . December 3." (Pl.'s Aff. to Ocwen Resp. at 16.) Additionally, Plaintiff acknowledges receiving notice from BANA about the transfer of loan servicing rights to Ocwen on November 12, 2013. (Pl.'s Aff. to Ocwen Resp. at 15 (On "November 12, 2013[,] Affiant Received letter from BOA about the servicing . . . being transferred on December 1, 2013 [sic] to Ocwen Loan Servicing, LLC").) Thus, Plaintiff has failed to offer any evidence that Defendant failed to comply with the notice requirements of the Deed of Trust and Texas law.

### 2. Foreclosure by Mortgage Servicer

As explained above in Subsection A, Defendant BANA has affirmatively established that HSBC is the valid owner of the note per the December 27, 2011 recorded assignment by GreenPoint, through MERS. (Def.'s App., Ex. C at 43.) The evidence clearly shows that BANA was the loan servicer from the time of Plaintiff's default, when the loan was accelerated, and when foreclosure was initiated. (Def.'s App. at 5-6 & Ex. D at 46 & Ex. E at 49 & Ex. H at 56; Ocwen's App. at 3 & Ex. A8 at 63). As HSBC's loan servicer, BANA had authority to initiate foreclosure under Texas law. Tex. Prop. Code § 51.0025. Moreover, BANA did not conduct the foreclosure sale after the servicing rights were transferred to Ocwen. Instead, the Substitute Trustee's Deed shows that Ocwen, acting on behalf of the current mortgagee, HSBC, conducted the foreclosure sale, following the effective date of the noticed servicer transfer. (Def.'s App. at 6 & Ex. H at 56; Ocwen's App., Ex. A12 at 85.) The Court finds no merit to Plaintiff's contrary contentions on this point.

### 3. Homestead Protection

Although not discussed in Defendant's motion, Plaintiff has claimed that the property at issue is her homestead.  (Pl.'s Am. Compl. at 3.)  A foreclosure on a deed of trust lien may be challenged on the ground that the property sought to be sold qualifies as the mortgagor's homestead and is protected from forced sale.  Tex. Const. art. XVI, § 50.  No specific writing is needed; the mere act of using and enjoying the property as a home is sufficient.  *Dodd v. Harper*, 670 S.W.2d 646, 649 (Tex. App.—Houston [1st Dist.] 1983, no writ); *see Nat'l Loan Investors, L.P. v. Taylor*, 79 S.W.3d 633, 635 (Tex. App.—Waco 2002, pet. denied) (testimony of defendants as to occupancy of property, coupled with defendants' listing of property as homestead in documents in bankruptcy proceeding, was sufficient evidence to support homestead finding), *overruled on other grounds by Dallas Sales Co. Inc. v. Carlisle Silver Co.*, 134 S.W.3d 928 (Tex. App.—Waco 2004, pet. denied).

A homeowner may waive the right to claim particular property as a homestead by a clause in the deed of trust if the property was not being used as a homestead at that time.  A disclaimer clause that was valid when made will estop the mortgagor from asserting homestead rights if the property is used as a homestead at some time in the future.  *Miles Homes of Texas, Inc. v. Brubaker*, 649 S.W.2d 791, 793 (Tex. App.—San Antonio 1983, writ refused n.r.e.).  Here, Plaintiff did not waive the right to claim homestead property.  (Def.'s App., Ex. B at 29.)  However, the Texas Constitution excepts from homestead protection a forced sale for the payment of debts relating to "the purchase money thereof, or a part of such purchase money."  Tex. Const. art. XVI, § 50(a)(1); *see also Gregory v. Ward*, 18 S.W.2d 1049, 1050-51 (Tex. 1929) (holding that the Texas Constitution does not protect a homestead from forced sale for the payment of purchase money or invalidate mortgages, deeds of trust, or other liens on the

homestead, where executed to secure the payment of purchase money). Thus, the Defendant had authority to foreclose on Plaintiff's property irrespective of Plaintiff's homestead claim because the foreclosure was to collect purchase money from the original Note and Deed of Trust on such property.

### 4. Grossly Inadequate Selling Price[15]

Under Texas law, for purposes of wrongful foreclosure, a grossly inadequate price is one that is "so little as to shock a correct mind." *Martins*, 722 F.3d at 256 (affirming District Court's grant of summary judgment in favor of the lender and holding that the foreclosure selling price was not grossly inadequate where the house sold for $133,897.86 and had been recently appraised for $145,716) (internal quotations omitted). Here, Plaintiff's home was purchased in 2007 for $513,000, and sold at foreclosure for $508,500. (Ocwen's App. at 2 & Ex. A12 at 85.) Because the foreclosure price was more than 99% of the purchase price, the Court holds that Plaintiff cannot satisfy the definition of a grossly inadequate selling price as a matter of law.

### 5. Pre-foreclosure Tender of Amounts Owed

In order for a foreclosure to be set aside, a plaintiff must tender the amount due and owed under the loan. *Lambert*, 993 S.W.2d at 835; *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref's n.r.e.). As explained above, Plaintiff has failed to put forward any evidence that the Note was paid in full. In her November 12, 2012 bankruptcy schedules, Plaintiff acknowledged that she was in default on the loan (Ocwen's App., Ex. A8 at 63), and her default apparently continued through the December 2013 foreclosure

---

[15] Defendant claims that Plaintiff must show a gross inadequate selling price. However, there is some Texas case law contradicting this claim. *See, e.g.*, *Shearer v. Allied Live Oak Bank*, 758 S.W.2d 940, 942 (Tex. App.—Corpus Christi 1988, writ denied) (explaining that noncompliance with the procedures surrounding a foreclosure sale is sufficient reason for a court to set aside the sale, even if the sales price was adequate to account for the indebtedness). However, the great weight of authority indicates that the Plaintiff must also satisfy this element. *See, e.g.*, *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726-27 (5th Cir. 2013) (stating that the "plaintiff-mortgagor may avoid showing a grossly inadequate selling price if he or she alleges that the defendant-mortgagee (lender) deliberately 'chilled' the bidding at the foreclosure sale").

(Def.'s App. at 5-6). Thus, Plaintiff has failed to raise a genuine issue of material fact, *see Little*, 37 F.3d at 1075, and cannot seek reversal of the sale even if she can prove the other elements of wrongful foreclosure. *Falk v. Wells Fargo Bank*, No. 3:09-CV-678-B, 2011 WL 3702666, at *7 (N.D. Tex. Aug. 19, 2011), *aff'd sub nom. Estate of Falk v. Wells Fargo Bank, N.A.*, 541 F. App'x 481 (5th Cir. 2013); *Lambert*, 993 S.W.2d at 835-36 ("In order to be entitled to rescission, Lambert was required to actually tender the amounts due.").

Based on the foregoing, the Court recommends that Defendant's Motion for Summary Judgment on Plaintiff's implied cause of action for wrongful foreclosure be **GRANTED**.

### E. Quiet Title

Under Texas law, the elements of a quiet title claim are "(1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable." *Cruz v. CitiMortgage, Inc.*, No. 3:11-CV-2871-L, 2012 WL 1836095, at *4 (N.D. Tex. May, 21, 2012). The plaintiff must supply "the proof necessary to establish his superior equity and right to relief." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Moreover, "a necessary prerequisite to the . . . recovery of title . . . is tender of whatever amount is owed under the note." *Cook-Bell v. Mortgage Elec. Registration Sys., Inc.*, 868 F. Supp. 2d 585, 591 (N.D. Tex. 2012) (internal quotations and citations omitted).

Here, Defendants (collectively) have refuted any claim upon which Plaintiff's requested relief may be granted by showing that Plaintiff's title is not superior to their title and that Plaintiff has not tendered the amount owed on the Note. Specifically, Plaintiff's claim that the May 1, 2007 warranty deed gives her superior title is simply incorrect because those rights were superseded by the Substitute Trustee's deed recorded on December 20, 2013, following her

default. (Pl.'s Am. Compl. at 4; Ocwen's App., Ex. A12 at 85-88.) Based on the foregoing, the Court recommends that Defendant BANA's Motion for Summary Judgment on Plaintiff's cause of action for quiet title be **GRANTED**.

### F. Temporary Injunction

Because Plaintiff secured a temporary restraining order against Defendants as part of the underlying action, the restraining order issued by the state court should be dissolved and Plaintiff's requested temporary injunction be dismissed.

### RECOMMENDATION

It is recommended that Defendant's Motion for Summary Judgment [doc. 44] be **GRANTED** on all of Plaintiff's claims against Defendant BANA.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **May 7, 2015** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 23, 2015.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv